UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

|  |  |
|---|---|
| TARA BOOTHE and JUTTA MAYLAND on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAUPHINS, LLC and ROBERT BAUMHOWER<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:19-cv-00408-JB-N<br>)<br>)<br>)<br>)<br>)<br>) |

**JOINT MOTION FOR SETTLEMENT APPROVAL
WITH INCORPORATED MEMORANDUM OF LAW**

Named Plaintiffs Tara Boothe and Jutta Mayland along with 29 Opt-In Plaintiffs who joined this action ("Plaintiffs") and Defendants Dauphins, LLC and Robert Baumhower ("Defendants") (collectively "the Parties"), by and through their undersigned counsel, jointly move for Court approval of the Parties' Release and Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Sam J. Smith (hereafter, "Smith Decl."), filed contemporaneously herewith. Doc. 46-1, PageID.175-183. In further support hereof, the Parties state as follows:

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Named Plaintiffs, who worked for Defendants as Servers at the Dauphins restaurant located at 107 St. Francis Street, Suite 3400, Mobile, Alabama, filed a Complaint on July 19,

1

2019, alleging minimum wage and overtime violations under Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et. seq*.

Specifically, the Named Plaintiffs alleged that throughout their employment with Defendants, they were required to share their tips with dining room attendants who were alleged to not be customarily and regularly tipped employees, they were not paid the full minimum wage for non-tip generating work, and they were not properly informed of the tip credit provisions of Section 203(m) of the FLSA.  Defendants deny Plaintiffs' allegations and contend that the Plaintiffs were properly paid under the FLSA and provided appropriate notice of the tip credit provisions of Section 203(m) of the FLSA.

On August 20, 2019, the Parties jointly filed their Agreed To Motion And Stipulation Regarding The Conditional Certification And Notice To The Putative Class Members ("Agreed to Motion and Stipulation Regarding Notice"). Doc. 12, PageID.52.  On November 4, 2019, the Court granted the Parties' Agreed to Motion and Stipulation Regarding Notice. Doc. 30, PageID.99-100.  On November 25, 2019, the Court authorized notice was mailed and emailed to members of the putative collective action providing them with 60 days until January 24, 2020 to submit consent to join forms to Class Counsel.  Thirty-one (31) individuals including the Named Plaintiffs have filed consent to join forms in this collective action.  *See* Doc. 38, PageID.146; Doc. 39, PageID.156, 157; Doc. 40.

On May 21, 2020, the parties mediated this case before an experienced class and collective action mediator, Michael Russell, Esq.  The Parties exchanged documents and pay and timekeeping data to educate each other about their position and eventually reached

agreement on all issues with the assistance of an experienced mediator. With Mr. Russell's assistance, the Parties reached agreement on a settlement of all claims. Doc. 45, PageID.163.

To avoid the risks and unknowns as well as the costs of protracted litigation, the Parties desire to fully and finally resolve this action with prejudice, as to all counts, claims, and parties and seek Court approval of their Settlement Agreement pursuant to the standards set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

## SETTLEMENT TERMS

The Parties' Settlement Agreement provides that Defendants will pay One-Hundred Sixty-Five Thousand Dollars ($165,000.00) into a common fund (the "Gross Settlement Fund") to settle the claims of all Plaintiffs. *See* Doc. 46-1, PageID.176 (Settlement Agreement, Exh. 1 to Smith Decl.).

Pursuant to the Settlement, the balance of the Gross Settlement Fund after the payment of Court-approved service payments, attorneys' fees, costs and expenses, referred to hereinafter as the "Net Settlement Fund," was allocated for distribution to all Plaintiffs based on their hours worked and pay received during the three-year period that preceded the date they joined this action in the amounts set forth on Exhibit A to the Settlement Agreement with a $100 minimum amount to be paid to each Plaintiff. *See* Doc. 46-1, PageID.177; Doc. 46, PageID.169 (Smith Decl. at ¶ 9). Distributions from the Net Settlement Fund to all Plaintiffs will be evenly divided between back pay and liquidated damages. Doc. 46-1, PageID.177-178.

The Gross Settlement Fund will fund a service payment of up to $2,000 to each of the Named Plaintiffs for an aggregate total of $4,000 in recognition of the efforts they made for the benefit of other Dauphins' servers during the litigation, which included participation in

preparing the Complaint, reviewing pleadings, and attending a full day of mediation for the benefit of themselves and all Plaintiffs. *See* Doc. 46, PageID.170 (Smith Decl., ¶ 11); Doc. 46-1, PageID.177 (Settlement Agreement, at ¶ 3.b)..

Counsel for Plaintiffs seek to be awarded thirty-three and one-third percent of the Gross Settlement Fund ($55,000.00) to compensate them for attorneys' fees, litigation costs and expenses. *See* Doc. 46, PageID.170-171 (Smith Decl., ¶ 12); Doc. 46-1, PageID.177 (Settlement Agreement, at ¶ 3.a).

All amounts to be paid pursuant to the settlement are to be paid in three installments beginning within 35 days of Court approval of the settlement and ending on January 15, 2021. Doc. 46-1, PageID.177-178 (Settlement Agreement, at ¶ 4). Amounts allocated to back pay shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.). Defendants will pay the employer's share of FICA and FUTA, and any other state-specific requirements on the payments designated as back pay. Amounts allocated as liquidated damages shall be treated as non-wage income. Defendants will report the back pay payments on an IRS Form W-2 and the liquidated damages payments on an IRS Form 1099. Finally, the Settlement Agreement provides that Defendants will pay the expenses of the mediator. Doc. 46-1, PageID.179 (Settlement Agreement, at ¶ 9).

**MEMORANDUM OF LAW**

I. **The Parties' Settlement Represents a Fair and Reasonable Compromise of Disputed Claims**

   A. **The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.* as well as the "Fairness" Factors Applicable to Rule 23 Actions**

The Parties seek Court approval of their settlement because, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Crabtree v. Volkert, Inc.,* 2013 WL 593500 (S.D. Ala. Feb. 14, 2013). Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F. 2d at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* In the settlement of an opt-in collective action under the FLSA, the Court's role is to ensure that the employer does not "overreach" and take advantage of employees in settling claims for wages. *Id.*

After scrutinizing the Settlement Agreement, this Court will find that the settlement is a fair and reasonable compromise and should be approved. Specifically, the Agreement

resolves a *bona fide* dispute between the parties with respect to whether the employees at issue are entitled to minimum wages and overtime compensation under the FLSA and the amount of compensation due. Plaintiffs faced significant factual and legal obstacles, which posed the risk of an unsuccessful outcome if this case were to proceed to trial. Defendants would have defended this case, in part, by asserting that the server tip sharing practices did not violate the FLSA because the dining room attendants had sufficient contacts with customers such that they were properly included in the tip pool; that the side work performed by servers was related to their server duties and did not rise to the level required for them to be paid full minimum wage for this work, and the servers were informed of the tip sharing requirements under Section 203(m) of the FLSA. Doc. 46; PageID.172 (Smith Decl., at ¶ 14). Plaintiffs would have argued that the dining room attendants did not have sufficient contact with the public to be included in the tip pool, the side work performed was excessive such that the side work should have been treated as separate from the server work, and insufficient notice of the tip sharing provisions was provided to servers. *Id.* If the Court or jury was persuaded by Defendants' arguments, such a finding would result in no recovery for Plaintiffs. *Id.*

Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit," negotiated for the plaintiffs a "reasonable compromise of disputed issues." *See Lynn's Food Stores,* 679 F.2d at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In short, all relevant factors support a finding that the settlement represents a fair, adequate, and reasonable resolution of a *bona fide* dispute.

### B. The Settlement Was The Result of Arm's Length Negotiations Free From Collusion

The Parties' settlement is the result of adversarial, arm's length negotiations that took place with the assistance of an experienced class and collective action mediator. Doc. 46; PageID.171 (Smith Decl., at ¶ 13). It was negotiated at arm's-length by experienced counsel, free from fraud or collusion. *Id.* Its adversarial nature is evidenced by the exchange of comprehensive mediation statements after the production of numerous policy documents, payroll documents, and timekeeping records. *Id.*

A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), citing *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). In evaluating whether the proposed settlement represents such a compromise, this Court "is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement," *Cotton,* 559 F.2d at 1330, and both Plaintiffs' counsel and counsel for Defendants consider the settlement to constitute a compromise substantially beneficial to the Parties. *See* Doc. 46; PageID.172 (Smith Decl., ¶ 14-15). This is especially so, when weighed against the uncertain outcome and risk of any litigation, and the expense and delay which would result from prosecuting this action against Defendants through trial and appeal. The settlement provides back pay to the Plaintiffs using a statute of limitations that relates back three years from execution of the tolling agreement for all Plaintiffs. *Id.* The settlement amounts will be paid in three equal distributions, which was agreed to because of the impact the Covid-19 pandemic has had on the finances of the Defendants. *Id.* at PageID.170 (Smith Decl. ¶ 10). All of the Plaintiffs have been apprised of the terms of settlement and are in the

7

process of executing settlement forms (W-4 and W-9 forms). *Id.* at PageID.172 (Smith Decl. ¶ 14).

### C. Modest Service Payments Should be Approved for the Named Plaintiffs Who Helped Achieve This Favorable Settlement

Pursuant to the Settlement Agreement, the Named Plaintiffs are slated to receive a $2,000 service payment for their work representing the other Plaintiffs. These payments recognize the dedication these individuals demonstrated to this litigation and the extent of their efforts in assisting with the investigation of this case, consulting on the preparation of the complaint, advising Plaintiffs' counsel on appropriate informal discovery, preparing for mediation of the claims, attending mediation, consulting with Plaintiffs' counsel to determine a fair settlement fund, and other contributions that they made for the benefit of all Plaintiffs. Doc. 46, PageID.170 (Smith Decl., at ¶ 11).

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where potential class members on average received $38,000); *see Warren v. Cook Sales, Inc.,* Case No. 15-cv-0603-WS-M, 2017 WL 325829, *8 (S.D. Ala. Jan. 23, 2017) (Judge Steele noted in an FLSA collective action, that "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action").

The modest enhancement awards sought here ($2,000 per Named Plaintiff) are appropriate and reasonable, and consistent with awards made by other courts. *See e.g. Warren*

*v. Cook Sales, Inc.,* Case No. 15-cv-0603-WS-M, 2017 WL 325829, *7-8 (S.D. Ala. Jan. 23, 2017) ($5,000 service payment approved for Named Plaintiffs in FLSA collective action); *North Star Capital Acquisitions, LLC v. Krig*, No. 3:07–cv–264–J–32MCR, 2011 WL 65662 (M.D. Fla. 2011) (awarding $5,000 in incentive awards to the named class representatives); *Holman*, 778 F. Supp. 2d at 1315, 1319 ($5,000 in service awards approved); *Smith v. Wm. Wrigley Jr. Co.,* No. 09–60646–CIV, 2010 WL 2401149 (S.D. Fla. 2010) (preliminarily approving $10,000 incentive award for lead plaintiff); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 in service awards to the three representative plaintiffs).

### D. Plaintiffs' Counsel Should Be Awarded Thirty-Three and One-Third Percent of the Common Fund They Recovered for the Plaintiffs

The Settlement provides for Plaintiffs' counsel to request up to one-third of the Gross Settlement Fund as a reasonable amount of attorneys' fees, litigation costs and expenses. *See* Doc. 46, PageID.170-171 (Smith Decl., at ¶ 12). Plaintiffs' counsel seeks to be awarded thirty-three and one-third percent of the fund ($55,000) to compensate them for the attorneys' fees, costs and expenses they have incurred representing the Plaintiffs. *Id.*

Plaintiffs seek to recover their attorneys' fees and litigation costs and expenses from a common fund created by the Settlement, *i.e.* the Gross Settlement Fund, pursuant to *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class").

The percentage requested from the Gross Settlement Fund is reasonable in light of the fact that a gross settlement of $165,000 was obtained in spite of Defendants' vigorous defenses

and because Plaintiffs' counsel's Lodestar fees, costs, and expenses exceed $55,000, which is equal to 33 and 1/3 percent of the Gross Settlement Fund. *See* Doc. 46, PageID.170-171 (Smith Decl., ¶ 12). On a pure contingency basis, Plaintiffs' counsel vigorously pursued claims on behalf of all servers who worked at the Dauphins' restaurant in Mobile, Alabama and challenged the restaurants' pay practices for all servers in the face of strong defenses that the servers were properly paid a tip credit wage under the FLSA, which could have presented a total defense to the minimum wage and overtime claims at issue in this litigation. *Id.* Pursuing these claims required Plaintiffs' counsel to locate and interview numerous servers, conduct extensive research regarding Section 203(m) of the FLSA, engage in significant informal discovery, and negotiate a favorable settlement. Plaintiffs' counsel prepared a comprehensive damage model that was persuasive in establishing an estimate of the damages that could be recovered. *Id.* All Plaintiffs have benefited and will continue to benefit by these efforts.

The attorneys' fees requested by Plaintiffs' counsel should not be reduced because counsel efficiently resolved this case through extensive mediation and negotiation efforts rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation." MCL 4th § 14.121. As the Eleventh Circuit stated in *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988), "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model."

In similar cases, district courts in the Eleventh Circuit have frequently approved common fund attorneys' fee recoveries in the range requested here. *See*, *e.g., Vogenberger v. ATC Fitness Cape Coral, LLC*, 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *3-4 (M.D. Fla. Apr. 24, 2015) (33 percent of settlement fund approved as attorneys' fees and costs); *Hosier v. Mattress Firm, Inc.,* No. 3:10–cv–294–J–32JRK, 2012 WL 2813960 (M.D. Fla. June 8, 2012) (awarding 30 percent of the gross settlement); *Signorelli v. UtiliQuest, LLC,* No. 5:08–CV–38–OC–10GRJ, 2008 WL 7825757, *2 8-9 (M.D. Fla. July 25, 2008) (awarding 30 percent of common fund); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (attorneys' fees and costs equal to 30 percent of common fund approved); *Angione, et al. v. PSS World Medical, Inc.,* 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving attorneys' fees constituting 40% of common fund established for the benefit of 63 plaintiffs for unpaid overtime wages in case brought under FLSA and California labor law); *see also, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006)(attorneys' fees and costs equal to 31.9 percent of common fund approved). Plaintiffs' counsel has extensive experience litigating FLSA collective actions and other class actions and the results in this matter warrant the requested fees and costs since Plaintiffs' counsel have spent numerous hours on the litigation and settlement of this case. Plaintiffs' current Lodestar attorneys' fees exceed $78,000 and their costs and expenses exceed $1,500, which is higher than the $55,000 sought here. *See* Doc. 46, PageID.170-171 (Smith Decl., at ¶ 12). In addition, after Court approval of the settlement, Plaintiffs' counsel will continue to provide legal advice to Plaintiffs regarding the terms of the settlement and will facilitate the execution of the settlement,

including supervising and mailing the payments to be distributed from the settlement and in obtaining the appropriate tax forms for the payments from Defendants. *Id.*

## **CONCLUSION**

In sum, the Parties submit this Settlement as a fair and reasonable resolution of the disputed issues and that its entry will "secure the just, speedy, and inexpensive determination" of this action. Fed.R.Civ.P. 1. Accordingly, Plaintiffs urge this Court to enter the proposed order attached as Exh. 2 to the Declaration of Sam J. Smith (Doc. 46-2, PageID.185-186), approving the Settlement Agreement, approving Plaintiffs' counsel's request for attorneys' fees and costs, approving the service payments to the Named Plaintiffs, and dismissing the case with prejudice and retaining jurisdiction to enforce the terms of the Parties' settlement.

Dated: June 25, 2020

Respectfully submitted,

| | |
|---|---|
| /s/ Sam J. Smith<br>Sam J. Smith (pro hac vice)<br>FL Bar No. 818593<br>Loren B. Donnell (pro hac vice)<br>FL Bar No. 0013429<br>BURR & SMITH, LLP<br>9800 4th Street N., Suite 200<br>St. Petersburg, FL  33702<br>(813) 253-2010<br>ssmith@burrandsmithlaw.com<br>ldonnell@burrandsmithlaw.com | /s/ Kelly D. Reese<br>Kelly D. Reese<br>THE KULLMAN FIRM<br>P. O. Box 1287<br>Mobile, AL 36602<br>(251) 432-1811<br>KR@KullmanLaw.com<br><br>Attorney for Defendants |

Robert C. Epperson
ROBERT EPPERSON LAW OFFICE
P. O. Box 477
Foley, AL  36536-0477
(251) 943-8870
repperson@rcelaw.com

Attorneys for Plaintiffs